# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2016

Lyle W. Cayce
Clerk

No. 14-11157

CLARK BAKER; OFFICE OF MEDICAL AND SCIENTIFIC JUSTICE, INCORPORATED,

Plaintiffs - Appellees

v.

JEFFREY TODD DESHONG,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and JONES, and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiffs-Appellees Clark Baker and the Office of Medical and Scientific Justice, Inc. (the "OMSJ") brought this action against Defendant-Appellant Jeffery Todd DeShong alleging, *inter alia*, trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Texas Business and Commerce Code. The district court dismissed the Lanham Act claim, declined to exercise pendent jurisdiction over the state law claims, and denied DeShong's subsequent request for an award of attorney's fees stemming from Baker and the OMSJ's allegedly frivolous trademark claims. DeShong appeals the district court's denial of attorney's fees under the Lanham Act. In light of

No. 14-11157

recent Supreme Court precedent illuminating the standard for "exceptional" cases which warrant the award of attorney's fees, we REVERSE and REMAND.

I.

Clark Baker is a retired officer of the Los Angeles Police Department and a licensed private investigator. Relevant to this suit is his role as Chief Executive Officer of the OMSJ, a non-profit corporation which investigates medical and scientific corruption cases. In 2010, the OMSJ launched the website www.omsj.org to promote numerous medical, legal and investigative services for individuals involved in criminal or civil suits. One such service is the OMSJ's "HIV Innocence Group," a non-profit organization that facilitates the representation of individuals accused of the intentional or reckless infection of another person with HIV.

In 2011, DeShong launched two websites of his own: www.hivinnocencegrouptruth.com and www.hivinnocenceprojecttruth.com. According to DeShong, each was created in order to deconstruct the OMSJ's alleged misrepresentation of the effects of HIV and AIDS and allegedly false research that the OMSJ promulgated on its "HIV Innocence Group" webpage. As DeShong's website names clearly indicate, the use of the phrases "HIV Innocence Group Truth" and "HIV Innocence Project Truth" are similar to the "HIV Innocence Group" website published by the OMSJ.

II.

Baker and the OMSJ filed the underlying action against DeShong in the District Court of the Northern District of Texas, Fort Worth Division. The complaint, as amended, asserted four claims against DeShong: (1) trademark infringement under the Lanham Act; (2) trademark infringement under the

No. 14-11157

Texas Business and Commerce Code; (3) defamation; and (4) business disparagement.

The district court dismissed the Lanham Act claims, concluding that even taking Baker's allegations as true, he failed to raise an inference that a reasonable person could confuse the content of DeShong's website with the OMSJ's "HIV Innocence Group" trademark. Weighing statutory and common law factors, the district court declined to exercise jurisdiction over Baker's remaining state law claims.

DeShong moved for attorney's fees under § 1117(a) of the Lanham Act in the amount of $49,706.86, which the court denied. Relying on current Fifth Circuit precedent, the district court determined that DeShong failed to show that this suit was an example of an "exceptional" case which warranted the award of attorney's fees. The court concluded that DeShong had not shown by clear and convincing evidence that Baker and the OMSJ pursued this suit in bad faith. DeShong timely appeals.

On appeal, DeShong argues that this court should (1) adopt the Supreme Court's standard in *Octane Fitness, LLC v. Icon Health and Fitness, Inc.*, 134 S. Ct. 1749 (2014), which expanded the standard under which a lawsuit presents an "exceptional case" meriting the award of attorney fees; and (2) conclude that the OMSJ's groundless trademark claim is sufficient to deem this case exceptional.

### III.

We first address whether the district court erred in its interpretation of 15 U.S.C. § 1117(a) in denying DeShong's motion for attorney's fees under the Lanham Act. Our analysis begins with the text of § 1117(a): "The court in exceptional cases may award reasonable attorney fees to the prevailing party." In *Scott Fetzer Co. v. House of Vacuums*, we held that a case is "exceptional" if

3

No. 14-11157

brought in bad faith.  381 F.3d 477, 490 (5th Cir. 2004); *see also Robin Sing Educ. Servs. Inc. v. Excel Test. Prep.*, 291 F. App'x 620, 621 (5th Cir. 2008). "[T]he prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence . . . ." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992).

DeShong urges this court to adopt the Supreme Court's holding in *Octane Fitness*, which analyzed when a district court may award fees under the "exceptional" case standard as established under the Patent Act.  *See* 35 U.S.C. § 285; *Octane Fitness*, 134 S. Ct. at 1756.  The *Octane Fitness* Court unanimously decided that the word "exceptional" does not limit the award of attorney's fees in a patent lawsuit to cases in which a party's bad faith conduct is shown by clear and convincing evidence.  *Octane Fitness*, 134 S. Ct. at 1756. We adopt the Supreme Court's construction of "exceptional" according to its ordinary meaning:

> [W]hen Congress used the word in § 285 (and today, for that matter), "[e]xceptional" meant "uncommon," "rare," or "not ordinary." Webster's New International Dictionary 889 (2d ed. 1934); *see also* 3 Oxford English Dictionary 374 (1933) (defining "exceptional" as "out of the ordinary course," "unusual," or "special"); Merriam–Webster's Collegiate Dictionary 435 (11th ed. 2008) (defining "exceptional" as "rare"); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 771 F.2d 521, 526 (C.A.D.C.1985) (R.B. Ginsburg, J., joined by Scalia, J.) (interpreting the term "exceptional" in the Lanham Act's identical fee-shifting provision, 15 U.S.C. § 1117(a), to mean "uncommon" or "not run-of-the-mill").

*Id.*

Prior to *Octane Fitness,* the Federal Circuit held that patent litigants may only recover attorney's fees under § 285 with proof by clear and convincing evidence of either (1) litigation-related misconduct of an independently sanctionable magnitude or (2) a suit brought in subjective bad faith that is

4

objectively baseless. *Id.* at 1754 (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). Finding this framework inconsistent with the text of § 285, the Court embraced an expansive reading of the word "exceptional," explaining that the current standard articulated by the Federal Circuit was an inflexible framework superimposed onto statutory text that is inherently flexible. *Id.* at 1754, 1756 ("[T]he Federal Circuit abandoned that holistic, equitable approach in favor of a more rigid and mechanical formulation."). In fact, the Court turned to the D.C. Circuit's reading of the Lanham Act, where it held that "it [is] fair to assume that Congress did not intend rigidly to limit recovery of fees by a [Lanham Act] defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' . . . . Something less than 'bad faith' suffices to mark a case as 'exceptional.'" *Octane Fitness,* 134 S. Ct. at 1757 (alteration in original) (quoting *Noxell*, 771 F.2d, at 526). The Court defined an "exceptional" case under § 285 as any case which "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. For example, in *Fogerty*, the court explained that in determining whether to award fees under a similar provision in the Copyright Act, "district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

The Court similarly made clear that such a bad faith requirement would render § 285 superfluous: "We have long recognized a common-law exception

## No. 14-11157

to the general American rule against fee-shifting—an exception, inherent in the power [of] the courts that applies for 'willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1749 (alteration in original) (quotation marks omitted) (quoting *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–259 (1975)).

Finally, the Court rejected the "clear and convincing" evidentiary hurdle established by the Federal Circuit and has yet to construe similar fee-shifting statutes as requiring proof of entitlement to fees by clear and convincing evidence. *See id.* at 1758 ("[N]othing in § 285 justifies such a high standard of proof. Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less a high one.")

While *Octane Fitness* directly concerns the scope of a district court's discretion to award fees for an "exceptional" case under § 285 of the Patent Act, the case guides our interpretation of § 1117(a) of the Lanham Act and is instructive here. *See* S. Rep. No. 93–1400, at 2 (1974) (highlighting the identical language between § 285 and §1117(a), as well as Congress' reference to § 285 in passing §1117(a)).[1]

---

[1] In 1946, Congress amended the Patent Act to add a discretionary fee-shifting provision to award attorney's fees to the prevailing party upon the entry of judgment in any patent case. *See* 35 U.S.C. § 70 (1946 ed.) (recodified as 35 U.S.C. § 285); Act of Aug. 1, 1946, Ch. 726 § 1, 60 Stat. 778. Like the Patent Act, the Lanham Act did not authorize the awarding of attorney's fees to the prevailing party in its originally enacted legislation. *See* Act of Feb. 20, 1905, 33 Stat. 724. However, Congress recognized a compelling need for a provision allowing for the award of attorney's fees in the trademark litigation context in response to the Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967). *Fleischmann* held that attorney's fees were not available under the Lanham Act absent express statutory authority. *Id.* at 721; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313–14 (3d Cir. 2014). Because such a remedy existed in the patent law and copyright law fields, but not yet in trademark law, Congress enacted a similar provision under the Lanham Act in 1975. *See* Act of Jan. 2, 1975, Pub. L. No. 93–600, § 3, 88

No. 14-11157

Like the Patent Act, the Lanham Act's text establishes a flexible standard for whether a case is "exceptional." The text of § 1117(a), identical to § 285, says in full that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." It creates no rigid standard of culpable conduct. *See, e.g.*, *B & B Hardware, Inc. v. Hartgis Indus., Inc.*, 716 F.3d 1020, 1027 (8th Cir. 2013), *rev'd on other grounds, 1*35 S. Ct. 1293 (2015) (defendant can be awarded attorney's fees when the plaintiffs' suit meets one of four criteria: "groundless, unreasonable, vexatious, or pursued in bad faith"); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (same); *see also Ji v. Bose Corp.*, 626 F.3d 116, 129 (1st Cir. 2010) (allowing the awarding of attorney's fees under the Lanham Act when there is "something less than . . . bad faith").

Already in this court's power is the ability to award attorney's fees for conduct that is done in bad faith. Accordingly, because this long-established American common-law rule already provides for an award in such an instance, "Congress [could not have intended] to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action" when it enacted § 1117(a). *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 417, 419 (1978).

Finally, the Court has made clear its unwillingness to construe fee-shifting provisions such as § 1117(a) as requiring a clear and convincing evidence standard. *See Octane Fitness*, 134 S. Ct. at 1758. Because § 285 and § 1117(a) are clear "statutory equivalents," we read their nearly identical language to reflect the fact that the Court "think[s] it clear that Congress

---

Stat. 1955 (amending section 35(a) of the Lanham Act). The purpose of the fee-shifting provision in the Lanham Act is best understood in light of this legislative history.

intended the same language to have the same meaning in both statutes." *See, e.g.*, *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 745–7 (1988).

In light of the Supreme Court's clear guidance under § 285—and given the parallel purpose, structure, and language of § 1117(a) to § 285—we join our sister circuits in their reading of "exceptional" under *Octane Fitness* and construe the same meaning here. *See Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710 (4th Cir. 2015), *as amended* (Apr. 15, 2015) ("[T]he language of § 1117(a) and § 285 is identical, and we conclude that there is no reason not to apply the *Octane Fitness* standard when considering the award of attorneys fees under § 1117(a)."); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3d Cir. 2014) (importing the definition of "exceptionality" into its interpretation of § [1117(a)] and holding that the district court should apply the *Octane Fitness* standard when considering the award of attorney's fees under this provision).[2]  *See id.* at 754 ("[O]nly the most compelling evidence could persuade us that Congress intended the nearly identical language of these two provisions to have different meaning); *Levin v. United States*, 133 S. Ct. 1224, 1233 (2013) ("[I]t is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal

---

[2] Other circuits have taken a similar approach in interpreting the Lanham Act using the *Octane Fitness* framework:

> [W]e have "look[ed] to the interpretation of the patent statute for guidance" in interpreting § [1117(a)].  *Id.*  Moreover, in its explication of the word "exceptional," the *Octane Fitness* Court relied in part on the D.C. Circuit's holding [defining] the term "exceptional," as used in § [1117(a)] of the Lanham Act . . . *Octane Fitness*, 134 S.Ct. at 1756 (*quoting Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 526 (D.C. Cir.1985)). In so doing, the *Octane Fitness* Court noted that the Lanham Act fee provision is "identical" to § 285 of the Patent Act. *Id.* We believe that the Court was sending a clear message that it was defining "exceptional" not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well.

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014).

quotation marks omitted)). What's more, it stands to reason that in overruling the Federal Circuit's inflexible statutory interpretation—the same precedent upon which this court relied to require bad faith by clear and convincing evidence in this circuit[3]—the *Octane Fitness* Court has provided clear guidance from which we do not stray.

We merge *Octane Fitness's* definition of "exceptional" into our interpretation of § 1117(a) and construe its meaning as follows: an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an "unreasonable manner." *See Octane Fitness*, 134 S. Ct. at 1756. The district court must address this issue "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *See id.*

DeShong also asks us to decide whether this case merits attorney's fees under § 1117(a) in light of the *Octane Fitness* standard. We decline to do so because the district court has yet to decide this issue in the first instance.

## IV.

We therefore REVERSE the district court's denial of attorney's fees and REMAND for reconsideration of the propriety of awarding fees to DeShong in light of the aforementioned standard.

---

[3] "[W]e agree with the Federal Circuit that the prevailing party must demonstrate the exceptional nature of a case by clear and convincing evidence before a district court should decide whether to make the award." *CJC Holdings, Inc.*, 979 F.2d at 65.